UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA M. DESCHRYVER,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:16-cv-0146-TLN-CKD<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.    BACKGROUND

Plaintiff, born May 12, 1952, applied on March 9, 2012 for DIB, alleging disability beginning May 1, 2011. Administrative Transcript ("AT") 45, 83, 182-85. Plaintiff alleged she was unable to work due to chronic post-traumatic stress disorder, depression, anxiety, and vertigo.

AT 84. In a decision dated April 2, 2014, the ALJ determined that plaintiff was not disabled.[1]

AT 24-32. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2011, the alleged onset date.
>
> 3. The claimant has the following severe impairments: mild degenerative joint disease of the left knee, status-post anterior cruciate ligament (ACL) repair surgery 2008, status-post fractured left great toe June 2012, post-traumatic stress disorder (PTSD), anxiety disorder, and a cognitive disorder.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401, *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. The claimant has the residual functional capacity to perform medium work with frequent postural movements; understanding, remembering, and carrying out no more than detailed work tasks up to SVP 4; and the claimant can interact appropriately with the public, supervisors, and co-workers on no more than a frequent basis due to her anxiety with situational stressors.
>
> 6. The claimant is capable of performing past relevant work as a Deli Cutter/Slicer, Short Order Cook, and Snack Bar Attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2011, through the date of this decision.

AT 26-32.

The Appeals Council reviewed the ALJ's decision and issued its own decision on December 1, 2015 modifying the ALJ's decision in certain respects. AT 4-6. Specifically, the Appeals Council corrected the ALJ's decision to find that plaintiff "met the insured status requirements through September 30, 2014." AT 5. The Appeals Council further adopted the ALJ's residual functional capacity ("RFC") determination, but with the following corrections: "the claimant could only perform simple, repetitive tasks and was limited to occasional interaction with co-workers, supervisors, and the public as the claimant has moderate difficulties in social functioning and moderate difficulties with concentration, persistence or pace." Id. The Appeals Council also adopted the ALJ's finding that plaintiff could perform her past relevant work, but noted that "she is only capable of performing the past relevant work that does not exceed the corrected [RFC]." Id. In particular, the Appeals Council determined that plaintiff could perform her prior work as a deli cutter/slicer based on the corrected RFC. Id. Accordingly, the Appeals Council concluded that plaintiff was not disabled through the date of the hearing decision. Id.

/////

/////

II.     ISSUES PRESENTED

Plaintiff argues that the ALJ and Appeals Council, to the extent it modified the ALJ's decision, committed the following errors in finding plaintiff not disabled: (1) failed to consider the fact that plaintiff's past relevant work as a deli cutter/slicer was a composite job; (2) improperly determined that plaintiff could perform her past relevant work as a deli cutter/slicer based on the corrected RFC; (3) failed to address plaintiff's vertigo when determining her RFC; and (4) improperly assessed and weighed the medical opinion evidence in the record when determining plaintiff's RFC; and (5) mischaracterized the extent of plaintiff's mental health treatment.

III.    LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

4

1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.   ANALYSIS

   A. *The ALJ did not err by not Considering Plaintiff's Past Relevant Work as a Deli Slicer/Cutter to be a "Composite" Job*

First, plaintiff argues that the ALJ erred by failing to identify plaintiff's prior work as a deli slicer/cutter as a "composite" of two or more other jobs listed in the Dictionary of Occupational Titles ("DOT").[2] Plaintiff contends that her prior work as a deli slicer/cutter as she actually performed that job was a composite of multiple other jobs because, in addition to slicing meats and displaying them, she was also required to sell items to customers and clean her work area. Plaintiff asserts that the ALJ failed to properly account for this fact by relying on a single DOT listing for the job of deli slicer/cutter to determine that plaintiff's RFC still enabled her to perform her past relevant work.

The ALJ identified plaintiff's prior work as a deli cutter/slicer as falling under the job description set forth in DOT § 316.684-014 (Deli Cutter-Slicer), and noted that while that job is generally performed as light work, it was actually performed by plaintiff at an exertional level of medium work. AT 31. The ALJ further found that job to be "unskilled" work with a specific vocational preparation ("SVP") level of 2 as plaintiff had actually performed it. Id. In arriving at this conclusion, the ALJ relied on the testimony of the vocational expert ("VE"), who, after reviewing plaintiff's work history and hearing plaintiff's testimony regarding her past work duties, testified that plaintiff's past work as a deli cutter/slicer fell under the duties set out in DOT § 316.684-014, but that she actually performed that work at an exertional level of medium work instead of light work. AT 31, 65. "An ALJ may take administrative notice of any reliable job

---

[2] The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the Social Security Administration "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

1  information, including information provided by a VE." Bayliss v. Barnhart, 427 F.3d 1211, 1218
2  (9th Cir. 2005) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). "A VE's
3  recognized expertise provides the necessary foundation for his or her testimony. Thus, no
4  additional foundation is required." Bayliss, 427 F.3d at 1218. Accordingly, the ALJ properly
5  relied on the VE's testimony as substantial evidence to support her determination that plaintiff's
6  past work as a deli cutter/slicer fell within the job description set forth in DOT § 316.684-014, but
7  that plaintiff actually performed that job at the exertional level of medium work instead of light
8  work. Plaintiff provides little beyond her own interpretation of the evidence describing plaintiff's
9  past work to support her argument that the ALJ's determination was erroneous and that her past
10 work as a deli cutter/slicer was not sufficiently encompassed by the DOT listing that the VE
11 found appropriate. Because the ALJ's interpretation of the evidence in the record was rational
12 and her determination was on substantial evidence, plaintiff's argument that the ALJ erred in her
13 determination is not well taken. See Tommasetti, 533 F.3d at 1038 ("The court will uphold the
14 ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").

15     B. *The Appeals Council did not err in Determining Plaintiff Could Still Perform her Past*
16        *Relevant Work as a Deli Slicer/Cutter in Light of the Corrected RFC Determination*

17     Second, plaintiff argues that the Appeals Council erred when it determined that plaintiff
18 could still perform her past relevant work as a deli slicer/cutter given her corrected RFC, which
19 was more limited than the RFC the ALJ initially determined. Specifically, plaintiff asserts that
20 the Appeals Council could not rely on the VE's testimony that the ALJ had relied on at step four
21 because the ALJ's hypothetical questions to the VE did not contain the more restrictive
22 limitations contained in the Appeals Council's corrected RFC. Accordingly, plaintiff contends,
23 the Appeals Council's step four finding that plaintiff could still work as a deli slicer/cutter given
24 her corrected RFC was not supported by substantial evidence.
25     Even assuming that the Appeals Council erred in relying on the VE's testimony to support
26 its determination that plaintiff could perform her past work as a deli slicer/cutter because the VE
27 did not specifically testify that plaintiff could perform that prior work with the more restrictive
28 limitations that comprised the corrected RFC determination, any such error is harmless. The

6

regulations state that the Administration "will take administrative notice of reliable job information available from various governmental and other publications," specifically including the "Dictionary of Occupational Titles." 20 C.F.R. § 404.1566(d)(1). The DOT listing that the ALJ, and subsequently the Appeals Council, appropriately relied on to define plaintiff's past work as a deli slicer/cutter defines that job as requiring the ability to perform at SVP Level 2, DOT § 316.684-014, and the Ninth Circuit Court of Appeals recently held in Zavalin v. Colvin that the RFC limitation to simple, repetitive tasks was entirely consistent with that SVP level. 778 F.3d 842, 847 (9th Cir. 2015). Therefore, the Appeals Council's corrected RFC finding that plaintiff is limited to simple, repetitive tasks does not preclude plaintiff from doing that prior job. Similarly, the Appeals Council's corrected RFC finding that plaintiff is limited to "occasional interaction with co-workers, supervisors, and the public," the only other limitation the Appeals Council corrected through its decision, also did not preclude plaintiff from working as a deli slicer/cutter as it is defined in DOT § 316.684-014. That DOT listing describes the job as being "Not Significant" in the area of "People . . . Taking Instructions-Helping." DOT § 316.684-014, 1991 WL 672744. In all other respects, the Appeals Council adopted the ALJ's RFC determination, which was based on the VE's testimony that took into account all of the RFC limitations the ALJ determined.

While the VE, ALJ, and Appeals Council found that plaintiff's prior work as a deli slicer/cutter as she actually performed that job differed somewhat from the requirements set forth in DOT § 316.684-014, it only differed to the extent that it required plaintiff to perform at the exertional level of medium work instead of light work; they did not find that plaintiff's work required a greater capacity with regard to the non-exertional functional areas in which the Appeals Council found plaintiff to be more limited than the ALJ's initial decision. Accordingly, the additional non-exertional limitations the Appeals Council determined did not preclude plaintiff from performing her prior job as a deli slicer/cutter as she had actually performed it.

/////
/////
/////

7

Because the additional non-exertional limitations contained in the Appeals Council's corrected RFC determination would not have precluded plaintiff from performing her prior work as a deli slicer/cutter, any error the Appeals Council may have committed in relying on the VE's testimony that did not take the additional limitations into account was harmless error.

C. *The ALJ did not err in her Assessment of Plaintiff's Vertigo*

Third, plaintiff contends that the ALJ erred by failing to expressly evaluate plaintiff's vertigo even though the record demonstrates that it had been diagnosed and there is evidence that it impacted plaintiff's ability to work around hazards. Plaintiff argues that the ALJ's finding that plaintiff had no restrictions regarding working around hazards erroneously ignores Dr. Hughes's opinion evidence attributing such limitations to plaintiff's vertigo and the other evidence in the record related to vertigo. The court disagrees.

As an initial matter, the ALJ did address plaintiff's allegation that she has vertigo in her decision when discussing plaintiff's RFC. AT 28. Furthermore, and contrary to plaintiff's assertion, Dr. Hughes, a non-examining physician, did not opine that plaintiff should avoid even moderate exposure to hazards and concentrated exposure to noise based on plaintiff's diagnosis of vertigo. Rather, Dr. Hughes opined those limitations based on plaintiff's "mild tinnitus." AT 93. Other physicians who provided opinions in the record reviewed plaintiff's medical record and did not include in their opinions any limitations attributable to vertigo. See AT 477-83, 507-12. As discussed below, the ALJ properly assigned relative weights to those physician's opinions and cited to them as substantial evidence in support of her RFC determination, which did not include a limitation from work involving machinery and other environmental hazards. Furthermore, plaintiff herself did not claim in her initial function report that she had any physical limitations stemming from vertigo or any other alleged physical impairment, nor did plaintiff's husband state that plaintiff had such physical impairments in his third-party function report. AT 223-38. The record simply fails to demonstrate that plaintiff's vertigo caused her additional limitations relating to her ability to work around hazards. Accordingly, the ALJ did not err by not including additional limitations in her RFC determination attributable to vertigo.

/////

Moreover, even assuming, *arguendo*, that the ALJ had erred by not including a limitation regarding hazards to plaintiff's RFC due to her claims of vertigo, such an error would have been harmless. The DOT entry for plaintiff's prior work as a deli slicer/cutter notes that hazards such as moving mechanical parts, heights, extreme temperatures are conditions that "do[ ] not exist" with regard to that occupation. DOT § 316.684-014, 1991 WL 672744. Even if had the ALJ adopted the hazard limitations opined by Dr. Hughes that plaintiff erroneously claims were attributable to vertigo, those limitations would not have precluded the ALJ, or the Appeals Council, from determining that plaintiff could still perform her prior relevant work as a deli slicer/cutter. Accordingly, plaintiff's argument regarding the ALJ's consideration of her vertigo diagnosis is without merit.

D. *The ALJ did not err in Considering and Weighing the Medical Opinion Evidence*

Fourth, plaintiff argues that the ALJ erred in considering and weighing certain medical opinion evidence in the record. Specifically, plaintiff contends that the ALJ erred in her assessment of the medical opinions provided by Dr. Wildman, Dr. Drymalski, and Dr. Martin.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a

treating or examining professional.  Lester, 81 F.3d at 831.

                    1.  Dr. Martin and Dr. Wildman

Dr. Martin, a non-examining physician, provided a mental RFC assessment of plaintiff on April 20, 2013 based on a review of plaintiff's records.  AT 94-95.  In that assessment, Dr. Martin opined that plaintiff was "moderately limited" with regard to her ability to carry out very short and simple instructions and detailed instructions, maintain attention and concentration for extended periods, and accept instructions and respond appropriately to criticism from supervisors.  Id.  Dr. Martin found plaintiff to be "not significantly limited" with regard to all other areas of mental functioning.  Id.  Based on these findings, Dr. Martin opined that plaintiff is "[c]apable of carrying out simple and detailed instructions," but "may have difficulty with highly complex instructions."  AT 95.  She opined further that plaintiff "may have some mild to moderate limitations in [her] ability to interact with supervisors."  Id.

Dr. Wildman conducted a consultative psychiatric examination of plaintiff on September 5, 2012.  AT 477-83.  Based on his examination and review of plaintiff's medical records Dr. Wildman opined that plaintiff "is cognitively able to understand, remember and carry out simple, detailed and mildly complex instructions," but that "she appears to be moderately-to-severely impaired in her ability to interact appropriately with coworkers, supervisors and the public," which "restricts her to simple tasks."  AT 482.  Dr. Wildman opined further than plaintiff "is moderately impaired in her ability to maintain concentration and attention," which "restrict[s] her to detailed tasks."  Id.

With regard to Dr. Martin, plaintiff argues that the ALJ erred by assigning that opinion "significant weight," but failing to incorporate into her RFC determination Dr. Martin's opinion that plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and accept instructions and criticism from supervisors.  Plaintiff contends that the ALJ's RFC determination that plaintiff is able to carry out detailed work tasks up to SVP level 4, which denotes an ability to perform semi-skilled work, and interact appropriately with the public, supervisors, and co-workers on a frequent basis was directly contrary to the limitations Dr. Martin opined.  Accordingly, plaintiff argues, the ALJ

1 erred in assigning significant weight to Dr. Martin's opinion without either providing any reasons
2 to support her rejection of the above aspects of Dr. Martin's opinion that conflicted with the
3 ALJ's RFC determination, or adopting those aspects of Dr. Martin's opinion into that
4 determination.

5 Plaintiff argues further that the ALJ also erred in discounting the opinion of Dr. Wildman
6 because the ALJ assigned "great weight" that physician's opinion while only adopting certain
7 limitations contained in that opinion. Specifically, plaintiff asserts that the ALJ improperly failed
8 to adopt into her RFC determination Dr. Wildman's opinion that plaintiff was moderately
9 impaired in her ability to maintain concentration and attention, and failed to provide any reasons
10 for rejecting that aspect of the opinion.

11 Even assuming that the ALJ erred in assessing Dr. Wildman's and Dr. Martin's opinions
12 as she did, that error was harmless because the Appeals Council corrected it through its corrected
13 RFC determination that incorporated the aspects of those physicians' opinions that plaintiff
14 contests were not properly addressed by the ALJ's initial RFC determination. Indeed, in line with
15 the limitations opined by Dr. Wildman and Dr. Martin, the Appeals Council determined that
16 plaintiff "could only perform simple, repetitive tasks and was limited to occasional interaction
17 with co-workers, supervisors, and the public as [plaintiff] has moderate difficulties in social
18 functioning and moderate difficulties with concentration, persistence or pace." AT 5. Because
19 the Appeals Council appropriately found that plaintiff could still perform her past work as a deli
20 cutter/slicer in light of the corrected RFC determination that reasonably reflected the limitations
21 opined by Dr. Wildman and Dr. Martin that plaintiff draws into contention, which superseded the
22 findings contained in the ALJ's RFC decision to the extent it did not adopt those findings, any
23 error the ALJ may have made with regard to her weighing of those two opinions with regard to
24 the functional areas at issue is harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th
25 Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina
26 v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on
27
28

account of an error that is harmless").[3]

### 2. Dr. Drymalski

Dr. Drymalski, plaintiff's treating psychiatrist at the Veterans' Administration, issued two opinions in the record regarding plaintiff's mental functional capacity. In her first opinion, which consists of a one-page fill-in-the-blank document issued on March 2, 2012, Dr. Drymalski opined that plaintiff had a GAF score of 60, indicating mild-to-moderate symptoms, and that plaintiff's mental impairments caused her no limitations with regard carrying out activities of daily living, but "marked" limitations with regard to maintaining social functioning and concentration, persistence, and pace, meaning plaintiff is unable to function in those areas for more than one-third of the workday. AT 506. Dr. Drymalski opined further that plaintiff's mental impairments would prevent her from attending work more than four days per month. Id.

Dr. Drymalski issued a second opinion on May 9, 2013, wherein she opined that plaintiff had a GAF score of 50, indicating serious impairment, and noted that plaintiff was "highly anxious, easily distracted, [and] emotionally reactive." AT 507. Dr. Drymalski further opined that plaintiff's mental impairments rendered her "limited but satisfactory" in her ability to: remember work-like procedures; understand, remember, and carry out very short and simple instructions; maintain regular work attendance and be punctual within customary, usually strict tolerances; work in coordination with or in proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to change in a routine work setting; interact appropriately with the general public; maintain socially appropriate behavior; travel in unfamiliar places; and use public transportation.

---

[3] Plaintiff also argues in a footnote that the ALJ erred by completely failing to weigh the January 2013 opinion of Dr. Azara, a state agency non-examining psychologist who reviewed plaintiff's medical records. However, Dr. Azara's opinion contained the exact same limitations as those opined by Dr. Martin. Compare AT 78-79 with AT 94-95. As discussed above, the Appeals Council's corrected RFC determination incorporated the limitations opined by Dr. Martin, which were exactly the same as those opined by Dr. Azara. Accordingly, any error the ALJ may have made in not expressly weighing Dr. Azara's opinion in her decision is harmless error. See Curry, 925 F.2d at 1129; Molina, 674 F.3d at 1111.

AT 509-10. Dr. Drymalski also opined that plaintiff was "seriously limited, but not precluded" in her ability to: maintain attention for at least two hours; perform at a consistent pace without an unreasonable number of and length of rest periods; understand, remember, and carry out detailed instructions; and set realistic goals or make plans independently of others.[4] Id. Dr. Drymalski also found that plaintiff's mental impairments rendered her "unable to meet competitive standards" with regard to the following areas of mental functioning: complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; deal with normal work stress; and deal with stress of semiskilled and skilled work. AT 409-10. Finally, Dr. Drymalski found that plaintiff had "mild" difficulties with regard to activities of daily living, "moderate" difficulties with regard to maintaining social functioning, and "marked" difficulties in maintaining concentration, persistence, and pace, and would have one-to-two episodes of decompensation of at least two weeks duration every year. AT 511.

The ALJ assigned Dr. Drymalski's February 2012 opinion "very little weight" on the basis that the more restrictive limitations and extreme conclusions contained in that opinion, particularly, the findings that plaintiff had marked difficulties regarding social functioning and concentration, persistence, and pace,  and would be absent more than 4 days per month, were inconsistent with Dr. Drymalski's opinion that plaintiff had a Global Assessment of Functioning ("GAF") score of 60, which indicated only mild-to-moderate symptoms, and was generally unsupported by the other medical opinion evidence in the record regarding plaintiff's mental functional capacity. AT 30. The ALJ also noted that this opinion consisted of "check-the-box conclusions from a one-page assessment provided by [plaintiff] to [Dr. Drymalski] for purposes of securing disability both with the VA and the SSA." Id.

/////

/////

---

[4] Dr. Drymalski defined "seriously limited, but not precluded" to mean that "ability to function in [the corresponding] area is seriously limited and less than satisfactory, but not precluded in all circumstances." AT 509.

Similarly, the ALJ discounted Dr. Drymalski's May 2013 opinion, which the ALJ noted was written on a form "presumably supplied by [plaintiff or her representative]," because the extreme limitations contained in that assessment "were not corroborated within Dr. Drymalski's treatment records, which noted PTSD symptoms and situational anxiety managed with medication with generally no observations of acute or significant findings upon examination." Id. Finally, the ALJ noted with regard to both of Dr. Drymalski's opinions that "it appears the evaluations were primarily sympathetic reports of [plaintiff's] subjective evaluations for purposes of securing disability, and generally not supported by the overall record." Id.

With regard to Dr. Drymalski's February 2012 opinion, the ALJ properly concluded that the internal conflicts contained in that opinion undermined its evidentiary value. As the ALJ noted in her decision, Dr. Drymalski assessed plaintiff with a GAF score of 60, which indicates that plaintiff had generally moderate mental limitations stemming from her impairments, but also opined that plaintiff had "marked" limitations with regard to maintaining social functioning and concentration, persistence, and pace, which Dr. Drymalski defined to mean that plaintiff is unable to function in those areas for more than one-third of the workday, and would be absent from work more than four days per month. AT 506. The ALJ was correct to highlight this conflict between Dr. Drymalski's GAF score and the extreme limitations she opined in support of her determination that that opinion was entitled to reduced weight.

The ALJ further properly found the fact that the opinion consisted of little more than a single-page, check-the-box assessment that contains little in the way of an explanation for the functional limitations Dr. Drymalski opined decreased the amount of weight to which it was entitled. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)) ("[T]he ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'"); see also Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.").

/////

/////

Finally, the ALJ properly determined that Dr. Drymalski's opinion was at odds with the other examination findings in the record. For instance, Dr. Wildman conducted a consultative examination of plaintiff in September of 2012 and opined that plaintiff was "moderately-to-severely impaired" in her ability to maintain social functioning and only "moderately impaired" in her ability to maintain concentration, persistence, and pace. AT482. Dr. Martin found plaintiff either "moderately limited" or "not significantly limited" with regard to those areas of functioning. AT 94-95. These physicians' opinions directly conflicted with the more severe limitations Dr. Drymalski opined with regard to those areas of mental functioning, and the ALJ was permitted to resolve that conflict by finding that Dr. Drymalski's opinion was entitled to reduced weight. See Andrews, 53 F.3d at 1041.

With regard to Dr. Drymalski's May 2013 opinion, the ALJ properly found that the extreme limitations contained in that opinion conflicted with Dr. Drymalski's own treatment notes and the rest of the record more generally. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the existence of incongruities between a treating physician's objective medical findings and that physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations); Rollins, 261 F.3d at 856 (holding that the ALJ properly discounted a treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings). Indeed, Dr. Drymalski's treating notes from throughout the relevant period document that while plaintiff had a history of PTSD and alcohol abuse, those conditions were in remission and were well controlled with medication and other forms of treatment such as group therapy. See, e.g., AT 369-70, 372-74, 391-93, 397-98, 705, 836-38, 852-54, 875-76, 939-41, 948-50, 1151-53. Similarly, treatment notes from plaintiff's other treating physicians and notes from plaintiff's group therapy sessions further indicate that the extreme limitations contained in Dr. Drymalski's opinion were overly restrictive in light of the effectiveness of her treatment. See, e.g., AT 427-31, 803-15, 854-56, 919-21, 928. In addition, as discussed above, the other physicians' opinions in the record conflicted with the more restrictive aspects of Dr. Drymalski's opinion. See AT 94-

95, 477-83.

In sum, the ALJ provided several specific and legitimate reasons for discounting each of Dr. Drymalski's opinions and each reason was supported by substantial evidence in the record. Accordingly, the ALJ did not err in her assessment of Dr. Drymalski's opinions.

E. *The ALJ did not Commit Harmful Error in Characterizing Plaintiff's Mental Health Treatment in the Manner that she did*

Finally, plaintiff argues that the ALJ erred by misrepresenting plaintiff's mental illness treatment history by characterizing it in her decision as having been sporadic when the record shows that plaintiff had a long and consistent history of such treatment. However, even assuming that the ALJ's characterization regarding the extent of plaintiff's treatment was belied by the record, it is clear from her decision that she considered all of the evidence in the record, including all of plaintiff's mental health treatment records, and properly weighed the medical opinion evidence in the record to reach an RFC determination that was based on substantial evidence. AT 27-30. Accordingly, any error the ALJ may have committed in characterizing the treatment evidence as she did is harmless.

V.   CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////

that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 8, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 deschryver0146.ss